## In re WESTERN DISTRICT XEROX LITIGATION.

### No. Misc. Civ. 91–138.

United States District Court,
W.D. New York.

Nov. 4, 1991.

Donna Marianetti, Theodore Kantor, Rochester, N.Y., for plaintiffs.

Eugene Ulterino, Rochester, N.Y., for defendant.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate Judge.

Plaintiffs allege in their individual complaints that Xerox unlawfully discriminated against them·in violation of the Age Discrimination Employment Act (ADEA), 29 U.S.C. § 623. Although plaintiffs acknowledge (especially at oral argument) that their claims are of the disparate treatment variety only, they contend that a pattern or practice of discrimination supports their claim. Plaintiffs' employment with Xerox ended under a Reduction in Force (RIF) program which was implemented on both a voluntary (VRIF) and involuntary (IRIF) basis.

Defendant maintains that Xerox did not engage in age discrimination in implementing its RIF program. Rather, defendant claims that Xerox' competitiveness in world markets was poor during the early 1980s and that the company needed to reduce costs to remain competitive. The RIF program was devised to respond to these market conditions. Plaintiffs, of course, contend that this reasoning was a pretext for age discrimination.[1]

**1.** The Second Circuit recently articulated the shifting burden of proof confronting the plaintiff in an action under the ADEA as follows:

[T]he respective burdens of proof under the ADEA are the same as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1988). *See, e.g., Taggart v. Time, Inc.,* 924 F.2d 43, 45–46 (2d Cir.1991); *Montana v. First. Fed. Sav. & Loan Ass'n of Rochester,* 869 F.2d 100, 103 (2d Cir.1989); *Russo v. Trifari, Krussman & Fishel, Inc.* 837 F.2d 40, 43 (2d

The parties told me at the original scheduling conference that the issue of corporate-wide discovery would be contested; and, therefore, the court ordered them to support their various claims upon formal motion papers after discovery of the individual disparate treatment claims was completed. When the issue of discovery beyond each individual plaintiff's employing unit at Xerox came to a head, I determined from the parties' presentations at Rule 16 conferences that the matter could not be fairly determined in a summary order. The dispute concerned, primarily, the reach of *Hollander v. American Cyanamid Company,* 895 F.2d 80 (2d Cir.1990), which permitted corporate-wide discovery of similarly situated employees. In particular, my scheduling orders in each case issued after these Rule 16 conferences recited that the court would need an evidentiary basis upon which to decide whether the individual employing units implementing the RIFs "had the autonomy which precluded the need for nationwide discovery in *Earley v. Champion International Corporation,* 907 F.2d 1077, 1084–85 (11th Cir. 1990)."

Plaintiffs seek the following in their motion to compel discovery: relevant and material discovery concerning company-wide actions, decisions, procedures, protocols, committees, reports, and other relevant documents from at least January 1, 1980 through 2 years after each plaintiffs' termination.[2] Although plaintiffs' formal motion papers were not precise on the point, the court will use plaintiffs' original demand upon defendant's predecessor counsel as an appropriate reference. In that demand, made in a March 13, 1991 letter to defense counsel, plaintiffs requested the following:

> Firstly, I request any and all statistical information, including but not limited to, any prepared reports, studies, memorand[a] and all documents of uncompiled statistical information pertaining to the reduction in force and/or reductions in force occurring during the time period of 1981–1983 with respect to all individuals who were terminated either as a result of a voluntary or involuntary reduction.

> Secondly, I request all information provided in *Lusardi v. Xerox Corporation.*

Cir.1988). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Although an employer must answer a prima facie case with a "clear and reasonably specific" explanation of the challenged employment decision, *id.* at 258, 101 S.Ct. at 1096, "the burden of persuasion does not shift to the employer to show that its stated legitimate reason for the employment decision was the true reason." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 245, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (emphasis added); *see Binder [v. Long Island Lighting Co.,] supra* [933 F.2d 187], at 192 n. 1 [ (2d Cir.1991) ]. The plaintiff may carry his burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence," but it remains at all times the plaintiff's burden. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis added).
*Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991). It is discovery of pretext

that is at issue here. Defendant relies on the following portion of *Bay:*
> To be sure, high salary and age may be related, but, so long as the employer's decisions view each employee individually on the merits, do not impose a general rule that has a disparate impact on older workers, *see Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), and are based solely on financial considerations, its actions are not barred by the ADEA.

*Bay v. Times Mirror Magazines, Inc.,* 936 F.2d at 117. But defense counsel's argument goes to the merits, and cannot affect the determination of the proper scope of discovery.

2. Plaintiffs contend that Xerox has supplied documents dating from 1981 for three of more than one hundred interrogatories. Plaintiffs' counsel and defendant's former counsel agreed that the relevant time period would be from 1981 until two years after each plaintiff's termination. Plaintiffs' current demand is for documents dating from January 1, 1980. The parties will not be held to their original agreement, because defendant's motion papers (esp. Exh # 1 and # 2) establish that defendant's various RIFs began in 1980 and ended in 1983. That is the relevant time period, except that any particular plaintiff will have the benefit of discovery of a period two years after his or her termination.

Marianetti letter to Ingraham, dated March 13, 1991, at p. 2. Plaintiffs also seek attorney's fees and sanctions.

Defendant cross-moves for a protective order contending that discovery should be confined to the local facility where the relevant employment decisions were made. Defendant contends that discovery would include "such corporate level documents and other information which may have had an effect on each plaintiff's separation from Xerox." (Ulterino Affidavit ¶ 2).

A brief review of the discovery afforded to date places the matter in perspective. As described in defendant's motion papers:

15. Xerox produced approximately 5000 pages of documents. In addition to documents from the plaintiffs' local organization, Xerox produced corporate level documents which pertained to each IRIF and VRIF at issue. Such documents included: (a) statistical analyses of the IRIFs and VRIFs within the organizational unit during the relevant time period; (b) Xerox memoranda concerning plaintiffs' RIFs; (c) written justifications submitted to corporate management by local management in support of their RIF decisions affecting individuals who were employed more than eight years or had a total of years of service and age of 65; (d) performance/service matrices for individuals redeployed or IRIFed; (e) corporate personnel policies concerning work force reductions programs; (f) VRIF and IRIF planning documents; and (g) statistical affirmative action summaries.

16. In response to plaintiff's Interrogatories, Xerox provided, among other things for each of the plaintiffs, a list of all employees who were IRIFed or VRIFed by the relevant organization, together with their position, date of birth, and effective date of current service, and a similar list of new hires.

Ulterino Affidavit (Master file docket entry # 5) at ¶¶ 15–16, 7–8. Similarly, predecessor counsel described in more detail the extent of discovery.

Plaintiffs had requested information regarding employees IRIFed, VRIFed, hired and rehired. In response to these interrogatories, Xerox did not limit its answers to each plaintiff's RIF, each plaintiff's job title, each plaintiff's grade level or even each plaintiff's facility. Rather, Xerox responded with information regarding employees in the major Xerox organization which each plaintiff was employed by, i.e. the Reprographics Manufacturing Group ("RMG") or the Reprographics Business Group ("RBG"), located in Monroe County, New York, (the natural focus of the inquiry), for all of 1982 and 1983. All plaintiffs here were from these two organizations which together employed over 5,000 people in 1982; the RIFs these plaintiffs were included in were conducted, implemented and managed by these organizations. *See Lusardi v. Xerox Corporation, supra* [118 F.R.D. 351] at 356–57 [ (D.N.J. 1987) ]. The information produced regarding these employees was in certain respects, broader in scope than that turned over in *Hollander*.

Specifically, Xerox provided the following information to each plaintiff:

1. a list of all new hires in RBG (or RMG), Monroe County in 1982 and 1983 including each employee's name, date of hire, date of birth, job title and grade level;

2. a list of all employees IRIFed in RBG (or RMG), Monroe County in 1982 and 1983, including each employee's name, date of hire, date of termination, date of birth, job title and grade level;

3. a list of all employees IRIFed in RBG (or RMG), Monroe County in 1982 and 1983 who were subsequently rehired by RBG (or RMG) during that time frame, including each employee's name, date of rehire, date of termination, old job title and new job title; and

4. a list of all employees VRIFed in RBG (or RMG), in Monroe County in 1982 and 1983, including each employee's name, date of hire, date of separation, date of birth, job title and grade level.

Cumulatively, through these lists, Xerox provided plaintiffs' counsel with informa-

tion regarding over 1,500 Xerox employees.

Ingraham letter to the court, dated April 2, 1991, at pp. 4–5.

It is appropriate to set forth the procedural background for these and related cases. Most of the plaintiffs involved in this case were members of a conditionally certified class in an age discrimination action, entitled *Lusardi v. Xerox Corporation*, filed in federal district court in New Jersey.[3] Over 1300 former Xerox employees originally "opted in" the class in *Lusardi*. The district court there subsequently decertified the class. *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J.1987), *modified on petition for mandamus sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir.1988), *decertification adhered to after mandamus*, 122 F.R.D. 463 (D.N.J. 1988). All thirteen of the remaining plaintiffs in the New Jersey district court settled, and no cases are currently pending there. After settlement, plaintiffs in *Lusardi* moved again for certification of the class. This motion was denied as moot just over two months ago. *Lusardi v. Xerox Corporation*, Civ. 83–809 unpublished (D.N.J. August 14, 1991) (Politan, J.). There is, however, a case pending in the District of Connecticut. Reconsideration of Xerox's motion for summary judgment on statute of limitations grounds is now pending before Judge Daly in the District of Connecticut. *Allen v. Xerox Corporation*, Civ. No. B–89–383(TFGD) (D.Conn. original ruling filed June 18, 1990).

After preliminary statute of limitations litigation in these cases was resolved in favor of the plaintiffs, discovery proceeded apace under a scheduling order which, as described above, postponed the question of corporate-wide discovery of pattern and practice evidence until after discovery of the individual disparate treatment claims in each case. After reviewing carefully the submissions on both sides, it is the court's determination that defendant's motion for a protective order should be granted, and that plaintiffs' motion to compel should be denied.

The *Lusardi* litigation has, especially in view of the discovery already afforded, pivotal significance for this case. All but a few of the plaintiffs currently before the court "opted in" the conditional class in *Lusardi*. As part of the effort to finally determine the merits of class certification in *Lusardi*, plaintiffs were allowed full corporate-wide discovery of Xerox's RIF implementation. As confirmed at oral argument before me, there was no contention there that plaintiffs' discovery was inadequate or otherwise insufficient to give the plaintiffs a full opportunity to demonstrate why the class should be certified. Indeed, in an unrebutted statement during oral argument, it was revealed that plaintiffs' counsel in *Lusardi* went considerably further in their expression of satisfaction with the discovery there.

> At the conclusion of the discovery, it was agreed upon that in fact discovery was complete. Plaintiffs represented to the court that discovery was complete. Plaintiffs represented to the court that they were ready to proceed on their Motion for Summary Judgment based upon the discovery and indeed went further and said in the event that the motion is denied, and the certification of the class sustained, they were prepared to go to trial based upon their discovery which had been completed.

---

**3.** The additional plaintiffs are Borrelli, Sellers, LiVecchi, Wu, Case, and the Estate of Ronald R. Aleszczyk. Eighteen of the plaintiffs from *Lusardi* filed individual age discrimination lawsuits in the Western District of New York. The individual actions were dismissed by Judge Larimer for failure to file a timely claim with the EEOC. *Aleszczyk v. Xerox Corporation*, 1990 WL 251849 (W.D.N.Y. February 14, 1990). The Second Circuit reversed that part of the decision which dismissed plaintiffs' claims as untimely, holding that the "administrative charges filed by

the *Lusardi* named plaintiffs satisfied the appellants' obligation under section 7(d) of the ADEA." *Tolliver v. Xerox Corporation*, 918 F.2d 1052, 1060 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). The Second Circuit affirmed that part of the district court's decision which dismissed plaintiff Braun's Rehabilitation Act and state law fraud claims, and it remanded for further proceedings. *Id.* There are currently 24 individual cases pending before this court.

Statement of Mr. Ulterino at oral argument. In short, the plaintiffs in *Lusardi* had in principle all the discovery plaintiffs wish here, and they were ready without more discovery for a merits determination of their claims. The case was trial-ready, and acknowledged to be so by the plaintiffs themselves.

As a more fundamental matter, however, plaintiffs have had effective corporate-wide discovery here. Although discovery in *Lusardi* has been sealed pursuant to a settlement agreement, there is no reason to suppose that the conditionally certified class plaintiffs did not attach to their motion papers, which were filed, every item obtained in the corporate-wide discovery which tended to support certification of the class, and, concomitantly, plaintiffs' view of the Xerox RIF programs. Plaintiffs' counsel in these cases concede availed access to the filings in *Lusardi*, and indeed some documents filed there have turned up in the plaintiffs' motion papers here (more on the proper interpretation of these items appears below). Briefly stated, plaintiffs have had in these individual disparate treatment claims a "silver platter" of corporate-wide discovery. I presume that every document filed in *Lusardi* which supports plaintiffs' motion for corporate-wide discovery here has been submitted, and that there are no lurking bombshells in the New Jersey litigation which might legitimately upset the balance here. It is also safe to presume that if such bombshells existed in the *Lusardi* discovery they would have been appended to plaintiffs' papers supporting their three separate motions for permanent class certification and, therefore, would have been filed for ready access to the public and plaintiffs' counsel here. Indeed, Judge Politan's memorandum opinion denying the *Lusardi* plaintiffs' most recent motion for recertification of the class noted, "If additional evidence,

divergent from that already in the record, had been adduced through discovery [had between the decertification decision and settlement of the claims], plaintiffs may have attempted to file another motion for class certification before Judge Lechner." *Lusardi v. Xerox Corporation*, Civ. 83–809 unpublished letter opinion and order, at 10 n. 5 (D.N.J. August 14, 1991) (appended as Exh. # 3 to defendant's cross-motion for a protective order).

The final, and most significant, manner in which *Lusardi* affects the determination of these cross-motions can be found in the district court's findings in support of its decision to decertify:

> The described downsizing of the Xerox work force was implemented and managed at the local level. The local management assessed its particular work force needs, consistent with corporate policy. Accordingly, a reduction differed not only from organization to organization but also from manager to manager, as well as from RIF to RIF. It appears there was never a corporate-wide VRIF or IRIF. However, "there were at least 40 separate IRIF's and more than 25 separate VRIF's during the class period conducted at various times by particular Xerox organizations." (X.M. at 9.)

*Lusardi v. Xerox Corporation*, 118 F.R.D. at 356. These findings have not been impugned by anything plaintiffs in these cases submit to the court. Moreover, these findings occurred after the extensive corporate-wide discovery plaintiffs seek here. The motion papers, the course of discovery in these cases, and the manifest weakness of plaintiffs' various arguments directed to the documents gleaned from the *Lusardi* file, all point to the viability, and integrity, of the district court's findings in *Lusardi*.[4] If there was any colorable indication to the contrary, I would not hesitate to entertain

---

**4.** The parties have provided competing interpretations of several documents appended to plaintiffs' motion papers. In every instance, defendant's interpretation has factual support and a common sense ring-of-truth about it. Plaintiffs' interpretation of each is highly speculative, without factual support, and not entitled on this record to credit. Of course, plaintiffs will have

opportunity to test their theories in depositions of top level corporate officials which, the court is told, have not yet been completed. In addition, plaintiffs have been offered discovery of headquarters level documents related to the conception, development, inception and progress of the RIFs. This offer is now confirmed in this order (*see* Conclusion, *infra*).

departures, including significant ones, from the *Lusardi* findings. But a fully independent review of the record before me leads me inescapably to the same conclusion Judge Lechner came to.

These factors unequivocally point to judicial adoption of the discovery limitations sought by defendant. In *Earley v. Champion International Corporation*, 907 F.2d 1077 (11th Cir.1990), the court denied the plaintiffs' similar request for corporate-wide discovery of RIF implementation throughout the various corporate employing units. The court reasoned:

"In the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (denial of division-wide discovery request which encompassed some 7,500 employees in thirty-two districts and three manufacturing plants); *accord EEOC v. Packard Elec. Div., General Motors Corp.*, 569 F.2d 315, 318–19 (5th Cir.1978). While Champion's RIF was initiated at the national level, each plant was given considerable autonomy in drawing up its own RIF master plan. The decision to terminate Earley and Noe in the RIF—as opposed to other employees—was made at the local level. Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit. *See, e.g., Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir.1989).

*Earley v. Champion International Corporation*, 907 F.2d at 1084. *Earley* required further that plaintiffs show a "particularized need and likely relevance" as justification for the conduct of discovery beyond the local units which made the decision to terminate. *Id.* at 1085. *See also, Brown v. American Honda Motor Company, Inc.*, 939 F.2d 946, 954 (11th Cir.1991) ("Unless it is clear that nationwide practices are relevant, discovery should be confined to the local units of a corporation.")

The Sixth Circuit has recently applied *Earley's* approach to corporate-wide discovery in a Title VII case:

It is well-settled that information concerning an employer's general employment practices is relevant even to a Title VII individual disparate treatment claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *EEOC v. Roadway Express Inc.*, 750 F.2d 40 (6th Cir.1984) (holding that general employment practices are relevant to EEOC investigation of individual disparate treatment claim.) A plaintiff who must shoulder the burden of proving that the reasons given for her denial of promotions are pretextual should not normally be denied the information necessary to establish that claim. *See, e.g., Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir.1973). However, this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant. *See Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983). The focus of plaintiff's complaint was on the treatment she received from Bradford while working in its municipal bond department in Nashville. In her complaint, Scales alleged that on three separate occasions Bradford hired a man to fill a position in which she had expressed an interest. Where, as here, the employment decisions were made locally, discovery may be properly limited to the employing unit. *See Earley v. Champion International Corp.*, 907 F.2d 1077 (11th Cir.1990).

*Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906–07 (6th Cir.1991). Thus, *Earley* and *Scales* both provide valuable guidance in the determination of the scope of discovery in this case, in which the proof unequivocally shows primary decision making in regard to RIF implementation within the individual employing units. Plaintiffs' showing is wholly insufficient to meet the *Earley* criteria. "A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily moti-

vated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." *Earley v. Champion International Corporation,* 907 F.2d at 1085. Plaintiffs' showing here is not just vague, it is vacuous, based on speculative interpretations of documents which are demonstrated to be not credible, and thus not creating, even, any "vague possibility."

*Hollander v. American Cyanamid Company,* 895 F.2d 80 (2d Cir.1990) is not to the contrary. In *Hollander* the court found an abuse of discretion in the district court's denial of plaintiff's motion to compel answers to an interrogatory directed to the circumstances of similarly situated employees in other facilities. Defendants in *Hollander* opposed the motion on the ground that plaintiff's interrogatory was vague, the request overbroad, and it sought information pertaining to management employees throughout the company, and not merely those working in the facility with plaintiff. *Hollander v. American Cyanamid Co.,* 895 F.2d at 84. The Second Circuit granted discovery, stating the following:

> It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported non-discriminatory explanation. *See, e.g., McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26; *Lieberman v. Gant,* 630 F.2d 60, 68–69 (2d Cir.1980); *Logan v. St. Luke's–Roosevelt Hosp. Center,* 636 F.Supp. 226, 234 (S.D.N.Y.), *aff'd,* 805 F.2d 391 (2d Cir.1986). Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regard-

ing a particular individual masks a discriminatory motive.

*Hollander v. American Cyanamid Company,* 895 F.2d at 84. In *Hollander,* however, there was no proof that the primary decision maker resided in the local unit. Contrast *Zahorik v. Cornell University,* 729 F.2d 85, 95 (2d Cir.1984). Accordingly, there was every indication that the company's treatment of similarly situated management employees over 40 years of age in other American Cyanamid facilities might lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). The very nature of the plaintiff's status as a manager, with its discrete characteristics, made managers in other facilities "similarly situated." By contrast, in this case, plaintiffs indiscriminately seek full RIF data of every employing unit within Xerox despite a failure of proof that local implementation of a RIF in one unit was in any way connected or related to local RIF implementation in another unit. As it is, plaintiffs' counsel have full RIF implementation data concerning four separate employing units in the Rochester area. If any relationship or thread between each of these four RIFs exist, or if any common denominator of decision making crossing unit lines providing a basis to conclude that an employee in one unit is "similarly situated" to an employee in another unit, it would be expected that plaintiffs would present it in connection with their motion. But instead, the court is faced largely with hyperbole, expressed to be sure with a sense of some urgency, but nonetheless wholly lacking in factual support even with the "silver platter" benefit of the *Lusardi* filings.[5]

Finally, the dispute presented by these cross-motions concerns important (*see Hollander, supra*), but secondary evidence in a disparate treatment case. The so-called pattern and practice or statistical evidence sought here has limited relevance in a dis-

---

5. For similar reasons, *Flanagan v. Travelers Insurance Company,* 111 F.R.D. 42 (W.D.N.Y.1986) (Larimer, J.) is not helpful to plaintiffs. In a decision which presaged *Hollander,* the court in *Flanagan* granted similar pattern and practice discovery outside the particular local facility because "[t]his is not a case in which the employing unit or office operates independently of other offices." *Id.* 111 F.R.D. at 46. In the course of his opinion, Judge Larimer contrasted the holdings in several cases akin to this one in which discovery beyond the employing unit was denied. Although the principle upon which this case turns finds clear expression in *Flanagan,* the facts calling for a different ruling there are inapposite.

parate treatment case. The courts have often disparaged the probative value of statistical evidence outside the decisionmaker's particular employing unit or facility in these treatment cases. E.g., *Woodbury v. New York City Transit Authority*, 832 F.2d 764, 771 (2d Cir.1987); *Coser v. Moore*, 739 F.2d 746, 750 (2d Cir.1984); *Zahorik v. Cornell University*, 729 F.2d 85, 95 (2d Cir.1984). *Cf. Silver v. The City University of New York*, 947 F.2d 1021, 1022 (2d Cir.1991) (statistical data "fatally flawed because it does not take into account changes in the relevant pool" of similarly situated applicants). In *Zahorik*, for example, the court found statistics "meaningless absent a departmental breakdown" because the relevant employment decisions were made on a decentralized basis. *Id.* 729 F.2d at 95. *See also, Furnco Construction Company v. Waters*, 438 U.S. 567, 580, 98 S.Ct. 2943, 2951–52, 57 L.Ed.2d 957 (1978); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252–53 & n. 8 (7th Cir.1990) (statistics are of "relatively low importance in an individual disparate treatment case") (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* at 1315 & n. 72 (2nd ed. 1983)); S. Schulman & C. Abernathy, *The Law of Equal Employment Opportunity* ¶ 3.04[2][b] at 3–26 (1990) ("effectiveness of the use of statistics in individual disparate treatment cases is somewhat slight, usually regardless of the probative quality of the statistics").

It is unquestionably true that a plaintiff attempting to show pretext for an employer's defense of an employment decision must frequently rely on circumstantial evidence, "[b]ecause employers rarely leave a paper trail—or 'smoking gun'—attesting to a discriminatory intent." *Hollander v. American Cyanamid Company*, 895 F.2d at 85. *See also*, Steel & Clark, *The Second Circuit's Employment Discrimination Cases: An Uncertain Welcome*, 65 St. John's L.Rev. 839, 862–64 (1991) (collecting Second Circuit cases sensitive to a plaintiffs' proof problems). Evidence of discrimination against others on the basis of age would be relevant to establish intent or motive in connection with a particular plaintiff's termination, Fed.R.Evid. 404(b), and discovery of such circumstantial evidence should be afforded. *Robinson v. Transworld Airlines, Inc.*, 947 F.2d 40, 43 (2d Cir.1991) (discovery of employees "among whom might be found persons *situated similarly* to plaintiff") (emphasis supplied); *Hollander v. American Cyanamid Company*, 895 F.2d at 84–85 (treatment of management employees over age 40 throughout the company relevant to plaintiff's claim because those managers were "similarly situated" to plaintiff).

Plaintiffs have had such discovery of similarly situated employees, however. As recounted above, plaintiffs have full RIF data of over 1500 employees, from which they have ample opportunity to develop relevant pattern or practice evidence supporting their pretext claim. It is these 1500 employees who were similarly situated to plaintiffs, not the entire nationwide Xerox workforce subject to collateral RIF's implemented in other units. The suggestion that "the true facts of this case cannot be revealed and ... [that plaintiffs] will be denied the right to adequately prove claims set forth in their complaints" unless corporate-wide discovery is afforded (Marianetti Reply Affidavit ¶ 18, at p. 10) rings rather hollow in the face of these considerations. If the claims have merit, plaintiffs have abundant and voluminous discovery, from which to show pretext, of every similarly situated employee affected by the RIF pertaining to each plaintiff.

## CONCLUSION

Plaintiffs' motion to compel is denied and defendant's motion for a protective order is granted as set out more particularly above. Only one point needs clarification. I assume that the discovery described in Mr. Ulterino's Affidavit ¶ 15(e)–(f) (quoted above) includes the general headquarters or corporate policy level documents conceiving of the overall RIF plan in the early 1980s and directing, in a general sense, its implementation by the various employing units. These documents, if they exist, would not, in a strict sense, concern RIFs at Rochester locations only, but they would be relevant to show intent or motivation in

the inception of the overall RIF program. The affidavit of David T. Kearns, filed in *Lusardi* and appended as Exhibit #1 to defendant's motion papers, asserts that the RIF "programs utilized to meet the crises beginning in 1980 were not newly written ..., [but] had been on the books for some years." Kearns Affidavit ¶ 10 at p. 5. If, in addition to these previously written programs, any newly generated material exists justifying the RIF conception, development and implementation, in a general sense (i.e., not dealing solely with any particular unit but pertaining to all or any group including plaintiffs' units), they must be disclosed. Plaintiffs' depositions of the Corporate Policy Committee and any other committee or headquarters level official which participated in conceiving, developing or implementing in a general sense the overall RIF, or the Rochester Area RIFs, may also explore the original conception, development, and discussion at the headquarters level of the overall RIF, and it may include matters of implementation in a general sense that would have affected the Rochester RIFs even if other units' RIFs would have also been affected (e.g., early RIF policy or concept papers, general directives, and the like, if any exist). I did not take defendant's papers to oppose this approach, and indeed I understood the defense to candidly acknowledge that plaintiffs would be entitled to this material and to these depositions.

Accordingly, plaintiffs' request for attorney's fees and sanctions, which was included in its notice of motion but otherwise unsupported, is denied.

The Clerk is directed to file this order in the Misc.Civ.File No. 91–138, which was created pursuant to my order in each of these individual cases at plaintiffs' request. A copy should also be placed and docketed in each of the individual files. This order confirms my earlier orders that all papers filed in connection with these cross-motions in Misc. Civ. 91–138 are deemed a part of the record of each plaintiff's action file. This order confirms and settles the record again in each individual case in this manner.

SO ORDERED.