**David E. RODGER, Jerry N. Phillips, and Francis W. Pelone, Plaintiffs,**

v.

**ELECTRONIC DATA SYSTEMS, CORPORATION, Defendant.**

**No. 93–664–CIV–5–D.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

June 13, 1994.

**538**

Thomas A. Farr, James A. Roberts, III, James C. Dever, III, Maupin, Taylor, Ellis & Adams, Raleigh, NC, for plaintiffs.

Charles A. Edwards, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, for defendant.

## ORDER

DENSON, United States Magistrate Judge.

THIS CAUSE comes before the court on Plaintiffs' Motions to Compel Responses to Interrogatories and Production of Documents. Defendants have responded to both motions and they are now ripe for disposition.

### I

The complaint filed by Plaintiffs in this case consists of four causes of action arising out of the acquisition of Plaintiffs' former employer, Infocel, Inc., by Electronic Data Systems Corporation (EDS), and Plaintiffs' subsequent termination from employment with EDS. Plaintiff Rodger formerly was President of Infocel. Plaintiff Phillips was an Infocel officer and sales manager. Plaintiff Pelone was an Infocel salesman. EDS acquired 30% of Infocel stock in March, 1990. On June 1, 1991, EDS acquired the remaining 70% of Infocel common stock and redesignated Infocel as EDS' Local Government Division, a part of the State Operations Division. Roger became Director of Strategic Alliances, Phillips became Sales Manager, and Pelone was a salesperson in the Local Government Division of EDS. In May, 1993, EDS terminated Plaintiffs' employment as part of a reduction-in-force (RIF) in the State Operations Division.

In count one of their complaint, Plaintiffs Phillips and Pelone allege that Defendant willfully violated the North Carolina Wage and Hour Act (N.C.G.S. § 95–25.1 *et seq.*). Plaintiffs assert that EDS agreed to pay Plaintiffs Phillips and Pelone certain commissions based on the Infocel compensation plan for sales booked between June 1, 1991, and September 30, 1991, but then reneged on this promise and refused to pay these commission. In count two, Plaintiffs Phillips and Pelone allege breach of contract arising from this failure to pay commissions. In addition, Plaintiffs assert breach of contract based on an alleged breach of promise by EDS to provide Plaintiffs credit for all seniority-based employee benefits by using Plaintiffs' Infocel hire date for purposes of calculating these benefits.

In count three, Plaintiffs allege that EDS violated North Carolina public policy by discharging Plaintiffs Phillips and Pelone in retaliation for their request that EDS pay their commissions in accordance with the North Carolina Wage and Hour Act. In addition, Plaintiffs allege that EDS violated North Carolina public policy by discharging them because of their age. Finally, count four alleges fraud in connection with promises by EDS concerning payment of commissions and credit for seniority-based employee benefits. Plaintiffs seek compensatory and punitive damages arising out of these causes of action.

On December 21, 1993, Plaintiffs served their First Set of Interrogatories and First Set of Requests for Production of Documents on Defendant. On February 7, 1994, Defendant served its responses to these interrogatories and requests for production. The discovery dispute now before the court concerns Interrogatory Nos. 5, 6, 30, and 32, and Request for Production of Documents Nos. 7, 10, and 16.

### II

In Interrogatory No. 30 and Request to Produce Nos. 7 and 10, Plaintiffs requested certain information for each RIF undertaken by Defendant after 1988. Defendant re-

sponded to this interrogatory by providing information regarding RIF's at the Local Government Division, since its inception in June, 1991, only. Plaintiffs state that they "do not know ... whether the May 1993 reduction-in-force at the Local Government Division was isolated or part of a larger reduction-in-force" and argue that they are entitled to company-wide discovery because "[i]f EDS conducted reductions-in-force in operations other than the Local Government Division, the evidence may reveal that EDS used a different ranking scheme than the scheme used at the Local Government Division." In addition, Plaintiffs assert that "the evidence may reveal that EDS routinely laid off older employees."

Defendant, in opposition to the Motion to Compel, argue that since "Plaintiffs were discharged in a reduction-in-force devised and implemented within their local work unit, the Local Government Division," RIF's that occurred in that division are the only ones relevant to Plaintiffs' case. In addition, Defendant asserts that information regarding RIF's preceding the termination of Plaintiffs in May 1993 is not relevant to Plaintiffs' claim of age discrimination and it would be a "mind-boggling burden" for EDS to produce this information.

Federal Rule of Civil Procedure 26(b) permits "discovery regarding any matter not privileged, which is relevant to the subject matter in the pending action." Relevance is broadly construed by courts and "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Rule 26 is not to be interpreted so as "to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Fed.R.Civ.P. 26 Advisory Committee Note.

■ This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided. *See Ardrey v. United Parcel Service,* 798 F.2d 679, 683 (4th Cir.1986), *cert. denied,* 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987) (Title VII claim); *EEOC v. University of New Mexico,* 504 F.2d 1296, 1302 (10th Cir.1974) (same); *Trevino v. Celanese Corporation,* 701 F.2d 397, 405 (5th Cir.1983) (same); *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir.1991) (same); *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 592 (5th Cir.1978) (ADEA claim). However, the scope of discovery, even in a discrimination context, is not unlimited. "It is an abuse of F.R.Civ.P. 23 to make unsupported charges of classwide discrimination, in the hope that broadscale discovery may turn up some evidence to support the charges." *Cutner v. Atlantic Richfield Co.,* 16 Fair Empl. Prac. Cas. 743, 744, 1977 WL 15426 (E.D.Pa. 1977). Therefore, "discovery is subject to reasonable limitations imposed by the trial court in its discretion, after balancing the needs and rights of both plaintiffs and defendants." *Witten v. A.H. Smith and Co.,* 100 F.R.D. 446, 447 (D.Md.1984) (citations omitted).

■ Plaintiffs cite two cases to support their contention that company-wide discovery with regard to RIF's implemented by Defendant is appropriate in this case. In *Hollander v. American Cyanamid Co.,* 895 F.2d 80 (2d Cir.1990), the court held that company-wide discovery was appropriate to determine whether there were "patterns of discrimination against a group of employees." *Id.* at 84. However, in the *Hollander* case, there was no indication, as there is in the present case, that the facility in which the plaintiff worked exercised independent decision-making authority. Plaintiffs here "indiscriminately seek full RIF data of every employing unit within [EDS] despite a failure of proof that local implementation of a RIF in one unit was in any way connected or related to local RIF implementation in another unit." *In re Western District Xerox Litigation,* 140 F.R.D. 264, 270 (W.D.N.Y.1991) (limiting discovery to the employing unit).

"A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry" *Earley v. Cham-*

*pion International Corp.,* 907 F.2d 1077, 1085 (11th Cir.1990) (holding that because the termination decision was made at the local level, discovery on intent may be limited to the employing unit). However, the second decision cited by Plaintiffs, *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356 (9th Cir.1985), supports the argument that discovery should extend beyond the individual employing unit in this case.

In *Diaz,* a racial discrimination case, the court held that discovery regarding AT & T's hiring practices should not be limited to the Tucson facility at which plaintiff worked. The court stated that, although the facility Operation Manager makes the final hiring or promotion decision, the employer's "policies control the manner in which its supervisory employees make" employment decisions. *Id.* at 1364. Nevertheless, the court did not expand discovery beyond Western Region of AT & T, since the Operation Manager worked only with the Western Region personnel office in filling job openings in the facility.

Here, as in the *Diaz* case, although the Manager of the Local Government Division of EDS made the actual decisions regarding the discharge of employees, he collaborated with the President of the State Operations Division in initiating the reduction-in-force which resulted in Plaintiffs' termination. In Spring of 1993, Mark Mayo, President of the State Operations Division, decided to undertake a cost-cutting effort in the entire State Operations Division, which included the Local Government Division. As part of this effort, Mayo asked all of the managers in the Division, including Joe Wewerka, Manager of the Local Government Division, to "evaluate their entire organizations and determine how they could utilize their resources more efficiently." Mayo specifically told the managers that this effort would include reducing the number of employees in each organization. Although the managers made their own decisions regarding which employees would be discharged, Mayo reviewed each list submitted. Mayo's role in this effort may have "encourage[d] or permit[ted] discriminatory employment decisions by its [EDS'] supervisory personnel." *Diaz,* 752 F.2d at 1364.

Although Plaintiffs assert that this argument mandates discovery of all RIF's conducted by EDS throughout the 26 countries in which EDS operates since 1988, this exceeds the appropriate scope of discovery. A trial court should not permit "fishing expeditions" conducted by plaintiffs, even in a discrimination case. *See Hinton v. Entex, Inc.,* 93 F.R.D. 336, 337 (E.D.Tex.1981); *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 592 (5th Cir.1978). In a disparate treatment case, discovery should be "reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 618–19 (D.D.C.1983).

The only similarly situated employees to Plaintiffs in this case are those within the State Operations Division whose employment situations, like Plaintiffs', were supervised by the President of the State Operations Division. *See Prouty v. National Railroad Passenger Corp.,* 99 F.R.D. 545, 547 (D.D.C. 1983) (limiting discovery to the department in which the plaintiff worked and those other departments under the jurisdiction of the larger departmental unit which supervised all the departments). Therefore, Defendant is required to produce all the requested information regarding reductions-in-force throughout the State Operations Division. In addition, this information shall be limited to the time period of Plaintiffs' employment with EDS, from June, 1991. *See McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 63 (E.D.Pa. 1979); *Robbins v. Camden City Board of Education,* 105 F.R.D. 49, 63 (D.N.J.1985). Accordingly, Plaintiffs' Motion to Compel Responses to Interrogatory No. 30 and Request to Produce No. 7 and 10 is ALLOWED in part and DENIED in part. Defendant is ORDERED to provide Plaintiffs with all requested information with regard to RIF's in the State Operations Division from June, 1991.

### III

In Interrogatory No. 5, Plaintiffs requested that, for each complaint filed by an

EDS employee against EDS with any governmental agency since January, 1989, alleging age discrimination or violation of wage and hour laws, Defendant provide the name and address of the complainant and the date and substance of any action taken by the agency. In Interrogatory No. 6, Plaintiffs requested that, for each civil action filed by an EDS employee against EDS since January, 1989, alleging age discrimination or a violation of wage and hours laws, Defendant provide the name and address of the plaintiff and the disposition of the action or its current status. In Request for Production No. 16, Plaintiffs requested copies of all administrative and civil complaints filed against EDS from January, 1990, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.,* or any state and/or federal wage and hour laws.

In support of their Motion to Compel Response to Interrogatory Nos. 5 and 6 and Request to Produce No. 16, Plaintiffs contend that this information is relevant and material to their claims and any burden to EDS in producing this information is outweighed by Plaintiffs' need for the information. Plaintiffs argue that information concerning other employee complaints is necessary to determine whether EDS participated in a pattern or practice of age discrimination or wage and hour violations. In addition, past claims against EDS could support a finding of willfulness on the part of EDS and provide the basis for a punitive or liquidated damages claim.

In its response to Plaintiffs' Interrogatories, Defendant objected on the basis of irrelevance and burden. Nevertheless, Defendant did provide Plaintiffs with the information they requested with regard to the Local Government Group, where, Defendant asserts, all three Plaintiffs worked and in which decisions affecting Plaintiffs were made. Defendant argues that information regarding claims against other EDS business units would be irrelevant since each local unit manager has substantial autonomy over decisions regarding the employees in that unit. De-

fendant additionally asserts that requiring it to produce the requested information with regard to the entire corporation would be unduly burdensome. EDS is a global company with over 70,000 employees, who are subdivided into dozens of independent business units. EDS receives approximately 100 to 150 claims and lawsuits per year and categorizes them chronologically, not by subject matter. Therefore, Defendants assert, it would be an extremely time-consuming task for it to comb through these files to find the information Plaintiffs request.

Defendant argues that other claims of discrimination or violations of wage and hour laws against EDS would not be relevant to Plaintiffs' case. However, "[s]ince direct evidence of discrimination is rarely obtainable, plaintiffs must rely on circumstantial evidence and statistical data, and evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case." *Morrison v. Denver,* 80 F.R.D. 289, 292 (D.Colo.1978), citing *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir.1975). Therefore, in an employment discrimination context, information regarding prior discrimination suits against the defendant would be highly relevant to evaluate the defendant's employment practices as a whole and provide evidence regarding intent and willfulness.[1] *See, e.g., Robbins,* 105 F.R.D. at 58 ("As a general proposition, such questions [regarding past charges of discrimination against the defendant] are relevant"); *Flanagan v. Travelers Insurance Co.,* 111 F.R.D. 42, 49 (W.D.N.Y.1986) (holding that information regarding similar lawsuits filed against the defendant may reasonably lead to the discovery of other admissible evidence because an employer's general pattern of discriminatory treatment is relevant in an individual disparate treatment case). Such information would also be relevant to a claim for punitive damages.

Plaintiffs assert that all claims alleging age discrimination and violations of wage and hour laws against EDS would be relevant to

---

1. In finding that information regarding prior discrimination lawsuits filed against the defendant would be relevant to the plaintiffs' claim of discrimination, this court declines to follow the courts in *Miller v. Doctor's General Hospital,* 76 F.R.D. 136, 139 (W.D.Okla.1977) and *Prouty v. National Railroad Passenger Corp.,* 99 F.R.D. 545, 549 (D.D.C.1983), relied on by Defendants.

their case. However, as described above, each strategic business unit of EDS is autonomous with regard to employment decisions. Although Defendants assert that the decision to terminate Plaintiffs was made by Joe Wewerka, Manager of the Local Government Division, Mark Mayo, President of the State Operations Division, of which the Local Government Division is a part, ordered the "cost cutting effort" and had supervisory powers over the termination decisions in the Local Government Division, as well as in the other units within the State Operations Division.

Therefore, employment practices in the entire State Operations Division would be relevant to Plaintiffs' claim. Claims brought by employees in other business units of EDS, on the other hand, would not be relevant to Plaintiffs' case, since these employees were not similarly situated to Plaintiffs. *See, e.g., In re Western District Xerox Litigation, supra* (employees who alleged that their termination violated the ADEA were not entitled to corporate-wide discovery where employment decisions were made by the individual employing units); *Earley v. Champion International Corp., supra* (same). Accordingly, Defendants are required to provide Plaintiffs with the requested information with regard to discrimination and wage and hour lawsuits brought by employees in the State Operations Division. Since Defendants have provided Plaintiffs only with information regarding the Local Government Division, they are now ORDERED to provide the additional information with regard to the State Operations Division. Plaintiffs' Motion to Compel Responses to Interrogatory Nos. 5 and 6 and Request for Production No. 16 is ALLOWED in part and DENIED in part.

## IV

■ To address Defendant's claim of burden in response to Plaintiffs' Motion to Compel, the court finds it appropriate to tax the cost of production of above-specified materials to Plaintiffs. This will allay Defendant's concerns regarding the cost of production, as will it encourage Plaintiffs to narrowly tailor their discovery requests. In conducting discovery, litigants "ought not to be permitted to use broadswords where scalpels will suf-

fice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 187 (1st Cir.1989) (affirming decision finding overly broad interrogatories requesting information regarding nine job classifications in 62 stores over a four year period).

Unnecessary, wasteful discovery is best avoided by taxing the cost of its production against the party seeking it. Accordingly, the court will require Plaintiffs to pay the reasonable costs associated with the production, including photocopying expense and actual wages paid clerical employees for gathering and copying the materials. The photocopying costs shall not exceed rates charged by low-cost commercial copying businesses, such as Postal Instant Press or Kinko's. The reasonable time for clerical employees to produce these materials shall be reimbursed at the employees' gross wage rate. Managerial time and attorney fees will not be reimbursed.

Plaintiffs' and Defendant's counsel are directed to confer, after consultation with their client, to seek to minimize these costs by: (1) restricting the scope of materials as much as possible, and (2) using the lowest level employees who have the knowledge and skill required to retrieve the documents. Counsel shall attempt to agree on these expenses and only failing that, file a motion for taxation of these expenses with the court.

## V

■ Finally, Plaintiffs seek to compel Defendant to answer Interrogatory No. 32, which requested that, if Defendant claimed that any information was not subject to discovery on the grounds of any privilege, Defendant should provide certain information to Plaintiffs in order to permit them to assess the applicability of the privilege. Defendant opposed the request, asserting that it was overly broad and burdensome. Nevertheless, Defendant agreed in its response to the Motion to Compel to provide Plaintiffs with a log of privileged documents, consistent with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure, if Plaintiffs would do the same in regard to their alleged-

ly privileged documents. Since such disclosure is mandated by Rule 26(b)(5) *both Plaintiffs and Defendant* are ORDERED to produce the information required by Rule 26(b)(5)—"the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

#### Summary

Plaintiffs' Motion to Compel Responses to Interrogatory No. 30 and Request to Produce Nos. 7 and 10 is ALLOWED in part and DENIED in part. Defendant is ORDERED to provide Plaintiffs with the requested information regarding all reductions-in-force in the State Operations Division from June, 1991. Plaintiffs' Motion to Compel Responses to Interrogatory Nos. 5 and 6 and Request for Production No. 16 is ALLOWED in part and DENIED in part. Defendant is ORDERED to provide Plaintiffs with the specified information regarding claims of age discrimination and wage and hour law violations brought by State Operations Division employees against EDS. Plaintiffs' Motion to Compel Response to Interrogatory No. 32 is ALLOWED and both Defendant and Plaintiffs are ORDERED to produce the required information regarding allegedly privileged documents. All production is to be completed within fourteen (14) days of this order, unless counsel agree on more time. The costs associated with this production will be borne by Plaintiffs.

SO ORDERED.