Ellen SCHAAF, Plaintiff,

v.

SMITHKLINE BEECHAM CORPORATION d/b/a GlaxoSmithKline; SmithKline Beecham Corporation; and GlaxoSmithKline, Defendants.

No. 5:05–MC–22.

United States District Court,
E.D. North Carolina,
Western Division.

Dec. 22, 2005.

William Joseph Austin, Jr., Ward & Smith, P.A., New Bern, for Ellen Schaaf, Plaintiff.

## ORDER

DEVER, District Judge.

Plaintiff Ellen Schaaf sued her employer GlaxoSmithKline ("GSK") in federal district court in the Northern District of Georgia based on her April 2003 demotion from Regional Vice President to District Sales Manager. She alleged: (1) gender and pregnancy discrimination and retaliation under Title VII and the Pregnancy Discrimination Act; (2) retaliation under the Family and Medical Leave Act; (3) gender discrimination under the Equal Pay Act; (4) interference with her rights under the Family and Medical Leave Act, and (5) negligent retention. Pl.'s PRG Mem. 3.

Plaintiff, through two subpoenas issued under the authority of this court, has sought to compel the production of documents from two third parties who are not litigants in the underlying suit. Specifically, on October 21, 2005, plaintiff filed a Motion to Enforce Subpoena Duces Tecum and to Compel Production of Documents in relation to a subpoena issued on September 26, 2005, to Pyramid Research Group ("PRG") to produce certain documents. On November 9, 2005, plaintiff filed a Motion to Enforce Subpoena Duces Tecum and to Compel Production of Documents in relation to a subpoena issued on October 14, 2005, to Karen Cutler (a nonparty GSK employee). PRG and Cutler have responded that plaintiff's motions be denied and that each subpoena be quashed. On December 13, 2005, plaintiff filed a Notice of Supplemental Authority in relation to both subpoenas.[1]

As explained below, plaintiff's motions to enforce are denied, and the two subpoenas are quashed.

### I.

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas issued to third

---

1. This supplemental authority is an order by a federal magistrate judge in another district denying a third-party motion to quash a subpoena issued by the plaintiff. The order is of little help to the plaintiff because the non-party waived any objection to the subpoena by not filing a timely objection. Pl.'s Notice Ex. A. .

parties. *See* Fed.R.Civ.P. 34(c) ("A person not a party to the action may be compelled to produce documents... as provided in Rule 45."). In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R.Civ.P. 45(c)(3)(A), move for a protective order pursuant to Fed.R.Civ.P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R.Civ.P. 45(c)(2)(B). *United States v. Star Scientific, Inc.*, 205 F.Supp.2d 482, 484 (D.Md.2002).

■ Rule 45 adopts the standard codified in Rule 26, which allows for the discovery of any matter "not privileged, that is relevant to the claim or defense of any party" when the discovery request "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *cf. Anker v. G.D. Searle*, 126 F.R.D. 515, 518 (M.D.N.C.1989). However, simply because "requested information is discoverable under Rule 26[ ] does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.2004). Rule 26(b)(2) provides that a district court may limit discovery if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." *Id.; see also* Fed.R.Civ.P. 26(c) (providing discretion to court to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense"). A trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena" when considering the propriety of enforcing a subpoena. *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed.Cir.1986). In the context of evaluating subpoenas issued to third parties, a court "will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C.2005).

## II.

■ Turning first to plaintiff's motion to enforce her subpoena against PRG, the subpoena at issue mandates that PRG produce:

> any and all documents, maintained in either electronic format or paper files, relating to services provided to any District Sales Manager ("DSM"), Regional Vice President ("RVP"), and/or higher level employee of GlaxoSmithKline, aka SmithKline Beecham Corporation, ("GSK"); and/or to GSK in regard to any DSM, RVP or any higher level employee of GSK.

Pl.'s PRG Mem. Ex. A. PRG filed a Notice of Objections asserting that the subpoena (a) failed to allow a reasonable time for compliance, (b) subjected PRG to an undue burden, (c) required disclosure of trade secrets and confidential research, and (d) required disclosure of information not describing specific events or occurrences in dispute. Pl.'s PRG Mem. Ex. B. PRG and the defendants in the underlying litigation filed responses challenging plaintiff's motion to enforce the subpoena against PRG.

Plaintiff argues that her request calls only for the production of relevant material from PRG and is reasonably calculated to lead to the discovery of admissible evidence. Specifically, she states that:

> GSK has relied, at least in part, on the services provided by PRG in an attempt to justify the adverse actions GSK took against Plaintiff. Plaintiff's requests to PRG are designed to enable Plaintiff to substantiate her claims by gathering information that will show that GSK treated similarly-situated employees outside her protected class more favorably than it treated Plaintiff. The evidence will show that GSK provided other similarly-situated employees with the benefit of executive counseling and coaching from PRG prior to the implementation of formal discipline by GSK. Ms. Schaaf, in contrast, was only allowed such coaching and counseling from PRG after being given her verbal warning and PIP, although Ms. Schaaf repeatedly requested executive coaching prior to being placed on the verbal warning and PIP.

The records withheld by PRG are directly relevant to this issue.

Pl.'s PRG Mem. 6.

PRG asserts that GSK subpoenaed and collected from PRG all information pertaining to PRG's work with plaintiff, her regional management team, Jack Planchard (plaintiff's interim replacement), "and/or the individual members of the management team." PRG's Resp. 3 (citing GSK Subpoena, attached as Ex. A). PRG states that it complied with this subpoena, sent 580 pages of documents to GSK, and understands that GSK subsequently produced the documents to plaintiff. *Id.* PRG also states that it had never previously provided GSK any information it compiled while working with employees of GSK. *Id.* at 2. Accordingly, GSK could not have used any PRG documents when making employment decisions. *Id.* at 6. PRG also argues that GSK, and not PRG, possesses information about whether the relevant GSK decisionmaker provided other similarly-situated employees with the benefit of PRG coaching before implementing formal discipline against such an employee. *Id.* at 7. PRG also explains the confidentiality issues and substantial burden that compliance with the subpoena would create. *Id.* at 8. As part of the burden, PRG states that it has provided executive coaching services to GSK employees for 11 years. *Id.* at 3.

Based on plaintiff's own argument, her interest in obtaining the subpoenaed materials from PRG is in knowing which GSK employees similarly-situated to plaintiff received executive counseling and coaching from PRG before GSK implemented formal discipline rather than in obtaining the contents of PRG's evaluations of these counseling and coaching sessions. *See* Pl.'s PRG Mem. 6. As such, the subpoena at issue asks for a much broader swath of materials than is required to accomplish the plaintiff's objective. *See* Pl's PRG Mem. Ex. A.

More importantly, plaintiff's subpoena asks the wrong entity for the requested materials. GSK, *not* PRG, knows which similarly-situated GSK employees (if any) received executive counseling and coaching from PRG before the implementation of formal discipline by GSK. Indeed, the filings in this matter suggest that the relevant decisionmaker is plaintiff's supervisor, Lisa Gonzales. Def.'s Resp. Re: PRG 2; *cf. Rodger v. Elec. Data Sys.,* 155 F.R.D. 537, 542 (E.D.N.C.1994) (focusing on relevant decisionmakers in resolving discovery dispute in employment case). Accordingly, plaintiff should seek the answer to her question via a straightforward interrogatory to GSK, the deposition of Gonzales (or whomever the relevant decisionmaker is), or a Rule 30(b)(6) deposition of GSK. Plaintiff should not issue a broad, burdensome third-party subpoena to PRG, particularly after having received the documents responsive to the GSK subpoena issued to PRG. *See* PRG's Resp. 3. Because the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and the burden or expense of the proposed discovery from PRG outweighs its likely benefit, the motion to enforce is denied and the subpoena issued to PRG is quashed. *See* Fed.R.Civ.P. 26(b)(2), 26(c), 45(c); *Nicholas,* 373 F.3d at 543 (describing standard).

### III.

■ Turning to plaintiff's motion in relation to Cutler, plaintiff subpoenaed Cutler to produce:

> any and all SmithKline Beecham Corporation and/or GlaxoSmithKline, ("GSK") documents in your possession, custody or control not previously provided by GSK or yourself to Ashe Rafuse & Hill LLP, as counsel for Plaintiff. You may limit your compliance to documents created or used within the last ten years.

Pl.'s Cutler Mem. Ex. A. Cutler is an employee of GSK who works in human resources and was a human resources representative who supported the region in which plaintiff worked. Def.'s Resp. Re: PRG Ex. B at 1. Cutler objected on a number of grounds, including that the subpoena was "unreasonable, overly broad, and unduly burdensome." Pl.'s Cutler Mem. Ex. B. In arguing for the enforcement of the subpoena, plaintiff argues that she seeks:

> documents reasonably calculated to lead to the discovery of admissible evidence regarding Ms. Schaaf's retaliation and discrimination claims against GSK beyond

just Ms. Cutler's copies of investigation training materials which she volunteered to produce. For instance, Ms. Cutler, an[ ] HR manager for Defendant, may also possess documents relating to the investigation of Ms. Schaaf allegedly prompted by her subordinates and the role of the human resources employees in instigating it, the purported investigations into complaints about Jim Indermill, complaints about other RVPs or higher level executives at GSK, and other disciplinary proceedings involving RVPs or higher level executives at GSK . . . .

Pl.'s Cutler Mem. 6.

On its face, the subpoena seeks every GSK document in Cutler's possession created or used within the last ten years. Plaintiff's subpoena to Cutler—a non-party GSK employee—for *all* GSK documents in her possession from the past ten years stands as a paradigmatic example of a facially overbroad subpoena. A large quantity of the documents sought have no connection to anything involved in this case. *Cf. Rodger,* 155 F.R.D. at 542. The subpoena is therefore quashed for being facially overbroad and unduly burdensome.

Alternatively, the subpoena is quashed because plaintiff should seek relevant, responsive GSK documents from GSK via the discovery process in the Northern District of Georgia, and *not* by issuing third-party subpoenas for GSK documents to GSK employees who happen to live and work in the Eastern District of North Carolina. By definition, the documents that plaintiff seeks via third-party subpoena to Cutler are GSK documents, even if located in Cutler's GSK office or her home. *See, e.g., In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d 981, 984 (2d Cir.1983) ("[A corporation's] records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records, moreover, do not belong to him but to the organization."). To the extent that plaintiff seeks discoverable GSK documents as part of her ongoing litigation in the Northern District of Georgia, she should seek them via appropriate discovery requests to GSK in the Northern District of Georgia. *Cf. Riddell Sports, Inc. v. Brooks,* 158 F.R.D. 555, 558 (S.D.N.Y.1994) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.").[2]

Further, if plaintiff does seek documents from the corporate defendants, the defendants have an obligation to search within their corporate structures and produce non-privileged, responsive documents or to object. This obligation to search is not limited to a search within the geographic locale of the district court where the litigation is pending. If the corporate defendants fail to produce responsive documents or make what plaintiff believes are unfounded objections, then such conduct should be the subject of motions practice in the district court where the litigation is pending. Such conduct, however, should not result in third-party subpoenas to corporate employees of the defendants for corporate records. To permit such a practice invites a party to seek discovery from a corporate party opponent in the court where litigation is pending and for that same party to issue a multitude of third-party subpoenas to the employees of the corporate party opponent seeking the very same corporate documents or a variety of other corporate documents. Particularly where a corporate party has employees throughout the United States, such a practice unduly increases the costs of litigation for the parties, unduly burdens the non-party corporate employees who receive subpoenas for corporate records, and wastes judicial resources. *Cf.* Fed.R.Civ.P. 1. Additionally, if the district court where the litigation is pending issued a

---

**2.** This case does not involve or address a third-party subpoena issued to a *former* employee of a corporate party opponent wherein the subpoena commands production of corporate records. *Cf. In re Grand Jury Subpoena Dated Nov. 12, 1991,* 957 F.2d 807, 811–13 (11th Cir.1992). Likewise, the case does not involve a third-party subpoena issued to a corporate employee wherein the subpoena commands production of personal records of the employee. *See* Pl.'s Cutler Mem. Ex. A.

scheduling order with specific limits on discovery (e.g., a limitation on the number of requests for production of documents), such a practice invites a party to seek to evade the requirements of such a scheduling order.[3] Accordingly, the motion to enforce the Cutler subpoena is denied and the subpoena is quashed. *See* Fed.R.Civ.P. 26(b)(2), 26(c), 45(c).

### IV.

For the reasons states above, plaintiff's two motions to enforce are DENIED and the two subpoenas are QUASHED. PRG's request for sanctions is DENIED.

---

**3.** The court does not know whether the United States District Court for the Northern District of Georgia has issued a scheduling order in the underlying litigation. Whether that court has issued a scheduling order is not material to this order.